**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ELAINE M. ANTONGIOVANNI, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) | Civil Action |
| | ) | |
| v. | ) | No. 15-cv-10921 |
| | ) | |
| EQUIFAX INFORMATION SERVICES LLC, | ) ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO STAY PROCEEDINGS

### I. INTRODUCTION

Defendant Equifax Information Services, LLC ("Equifax") respectfully requests that the Court stay this case pending two forthcoming Supreme Court decisions that are likely to materially affect the Court's class certification analysis and potentially the dispose of the case on the merits.

In this putative consumer class action, Plaintiff Elaine M. Antongiovanni brings claims against Equifax for alleged willful and negligent violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq. See* Dkt. # 1, Class Action Complaint ("Compl.") ¶¶ 45, 49. In particular, Plaintiff asserts that Equifax willfully and negligently violated the FCRA in two ways: (1) "by failing to block information alleged by consumers to result from identity theft despite receiving all documentation required by [15 U.S.C. §] 1681c-2(a)," in purported violation of Section 1681c-2(a) (the "Blocking Claim"); and (2) "by failing to provide consumers with notice of the business name and address of any furnisher of information that Equifax contacted upon receiving the consumer's identity theft report and notice that the consumer has the right to

add a statement to the consumer's file disputing the accuracy or completeness of the disputed information," in purported violation of 15 U.S.C. § 1681c-2(c)(2) (the "Notice Claim"). *Id.* at ¶¶ 45, 49. Plaintiff also seeks to represent a nationwide class for each claim. *See id.* at ¶¶ 46, 50.

Plaintiff has failed to allege any actual harm suffered as a result of either the Blocking Claim or the Notice Claim. Moreover, whether any putative class member was harmed as a result of Equifax's alleged misconduct is an inherently individualized issue that could only be resolved through extensive fact-finding regarding that particular consumer's circumstances. Whether Plaintiff has Article III standing in the absence of any injury-in-fact, and in turn whether each member of a putative class has Article III standing for the class to be certified, are vital issues, the disposition of which will depend on the outcomes of two cases currently pending in the United States Supreme Court.

First, in *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (cert. granted Apr. 27, 2015), the Supreme Court will decide whether a consumer has Article III standing to assert claims under the FCRA absent a concrete and particularized injury-in-fact, as opposed to suffering only a technical violation of the statute. *Spokeo*, 13-1339, "Questions Presented," *available at* http://www.supremecourt.gov/qp/13-01339qp.pdf (last visited Feb. 4, 2016). This issue is crucial to this action, as Plaintiff has only alleged technical violations of the FCRA.

Second, and relatedly, in *Tyson Foods, Inc. v. Bouaphakeo*, 135 S. Ct. 2806 (cert. granted June 8, 2015), the Supreme Court will decide "[w]hether a class action may be certified or maintained under Rule 23(b)(3) . . . when the class contains hundreds of members who were not injured and have no legal right to any damages." *Tyson Foods*, No. 14-1146, "Questions Presented," *available at* http://www.supremecourt.gov/qp/14-01146qp.pdf (last visited Feb. 4, 2016). A decision in *Tyson* that holds that each class member—not just a representative

plaintiff—must prove injury-in-fact would apply the *Spokeo* ruling to the entire class. In that instance, a class trial would involve each class member presenting individualized evidence in an attempt to prove that Equifax's purported FCRA violations caused him or her to sustain a concrete and particularized injury and to describe the nature and extent of that supposed injury.

The Supreme Court heard oral argument in *Spokeo* on Monday, November 2, 2015, and it heard oral argument in *Tyson Foods* on November 10, 2015. Based on the Supreme Court's customary practice, decisions in *Tyson* and *Spokeo* will likely be rendered by the end of June of 2016. Given the significance of these decisions to class action jurisprudence and to FCRA class actions in particular, and the waste of resources associated with ruling on motions and, potentially, a class trial that might not result in any sustainable judgment, the proceedings should be held in abeyance to allow the Supreme Court to take action. Indeed, for these reasons, the overwhelming majority of courts confronting the issue, including recently this Court, have stayed similar putative class actions to await the impending decisions in *Spokeo* and *Tyson*. *See infra* pp. 10–13.

Accordingly, Equifax respectfully requests that the Court stay these proceedings pending the Supreme Court's decisions in *Tyson* and *Spokeo*.

## II. BACKGROUND

### A. The Statutory Scheme Governing Blocking of Credit Information Resulting from Identity Theft

In 2003, Congress passed the Fair and Accurate Credit Transaction Act, Pub. L. No. 108-159 ("FACTA"), amending the FCRA to add, *inter alia*, certain provisions meant to protect consumers from identity theft. One such provision is Section 1681c-2, which sets forth a framework by which a consumer may require a credit reporting agency ("CRA"), such as Equifax, to block the reporting of information in the consumer's credit file that is the product of

3

identity theft. Specifically, Section 1681c-2(a) requires a CRA to block the reporting of information that a consumer identifies as information resulting from an alleged identity theft within four business days of receiving from the consumer: "(1) appropriate proof of the identity of the consumer; (2) a copy of an identity theft report; (3) the identification of such information by the consumer; and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer." 15 U.S.C. § 1681c-2(a). Both the FCRA and the regulations promulgated thereunder set forth extensive definitions defining and providing illustrative examples for these criteria. *See id.* § 1681a(q); 12 C.F.R. §§ 1022.3, 1022.123.

Notwithstanding Section 1681c-2(a), Section 1681c-2(c) provides that a CRA may decline to block, or may rescind any block, of information identified by a consumer pursuant to subsection (a) if the CRA "reasonably determines that: (A) the information was blocked in error or a block was requested by the consumer in error; (B) the information was blocked, or a block was requested by the consumer, on the basis of a material misrepresentation of fact by the consumer relevant to the request to block; or (C) the consumer obtained possession of goods, services, or money as a result of the blocked transaction or transactions." 15 U.S.C. § 1681c-2(c)(1). When a CRA does exercise its discretion to decline or rescind a block of information, the CRA must notify the consumer of such decision "promptly, in the same manner as consumers are notified of the reinsertion of information under [15 U.S.C. §] 1681(a)(5)(B)." *Id.* § 1681c-2(c)(2).

B.      **Plaintiff's Claims**

Plaintiff alleges that she was a victim of identity theft by which an individual used her personal information to open a number of credit accounts without her knowledge. Compl. ¶ 27. According to Plaintiff, after discovering the unauthorized accounts sometime in November 2013,

DMSLIBRARY01\28161154.v2

she sent Equifax a letter "[o]n or about January 27, 2014" notifying Equifax of the fraudulent accounts and requesting that the information be blocked from her credit file, enclosing as support for her request a police report and a notarized identity theft victim's complaint and affidavit provided by the Federal Trade Commission. *Id.* ¶ 29. In response to her request, Equifax sent Plaintiff a letter dated March 7, 2014, notifying her that Equifax had determined "not to block the information subject to the submitted identity Theft and/or police report [she] provided," and that it was in the process of reinvestigating the disputed information by verifying the information with the named creditors. *Id.* ¶ 30.

Plaintiff alleges that Equifax willfully and negligently violated Section 1681c-2(a) by failing to block the information she identified as resulting from identity theft, despite receiving the documentation required by the statute. *Id.* ¶ 45. Plaintiff also alleges that Equifax willfully and negligently violated Section 1681c-2(c)(2) by failing to include in its March 7, 2014 letter to Plaintiff, or any subsequent letter within five days thereof, the information described in Section 1681(a)(5)(B)(iii)(II)–(III), which Plaintiff apparently interprets to be necessary for a Section 1681c-2(c)(2) notice to be made "in the same manner as [notification] under Section 1681(a)(5)(B)." *See id.* ¶ 49.

### C. Plaintiff's Sweeping Class Definitions

Based on what would be, at most, technical violations of the FCRA, Plaintiff seeks statutory damages, punitive damages, and attorney's fees and costs pursuant to 15 U.S.C. § 1681n. *Id.* ¶¶ 47, 51. In Plaintiff's 51-paragraph Complaint, however, she only once alludes to any purported injury she sustained as a result of Equifax's alleged conduct. In paragraph 35, Plaintiff alleges that "Equifax's failure to provide the required notice harmed [Plaintiff] by depriving her of valuable and consequential information related to the theft of her identity, and

her efforts to repair the resulting harm to her credit." In other words, Plaintiff does *not* allege that Equifax's alleged conduct caused her any economic injury, or even any emotional or psychological injury—Plaintiff's only purported injury was Equifax's alleged violation of the FCRA.

Plaintiff seeks to assert her claims on behalf of putative nationwide classes. With respect to the Blocking Claim, Plaintiff seeks to represent a class consisting of "[a]ll persons for whom Equifax failed to block disputed information despite receiving the documentation required by Section 1681c-2(a) for the time period beginning five years from the date this action was commenced up to the date of final judgment" (the "Blocking Class"). *Id.* ¶ 46. With respect to the Notice Claim, Plaintiff seeks to represent a class (the "Notice Class") consisting of:

> (a)     All persons to whom Equifax sent a letter in the form of the March 7, 2014 letter that Equifax sent to Plaintiff, attached [to the Complaint] as Exhibit 1,
>
> (b)     during the time period beginning five years from the date this action was commenced up to the date of final judgment,
>
> (c)     to whom Equifax did not also send a letter within five business days containing both the business name and address of any furnisher of information that Equifax contacted upon receiving the consumer's identity theft report and a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the disputed information.

*Id.* ¶ 50.

Significantly, these putative classes are not limited to those individuals who have sustained an injury-in-fact. The alleged Blocking Class includes all consumers whose information Equifax did not block after receiving certain documentation, irrespective of whether that decision caused damage to the consumers. The alleged Notice Class likewise includes all consumers who did not receive a notice that complies with the formal requirements of a

DMSLIBRARY01\28161154.v2

particular FCRA subsection—again, irrespective of whether not receiving the notice in any way damaged the consumers. Determining whether any consumer suffered an actual injury as a result of either of these actions would necessarily require highly individualized inquiries into each purported class member's circumstances, such that class certification would be inappropriate.

Accordingly, if in *Spokeo* the Supreme Court determines that a technical or statutory violation is insufficient to plead an FCRA claim, Plaintiff's claims will fail as a matter of law. Additionally, if in *Tyson* the Supreme Court determines that each class member must have a provable injury-in-fact in order to maintain their membership in the class action, this *Spokeo* requirement will be imposed upon each class member, and Plaintiff will not be able to meet her burden under Rule 23 of the Federal Rules of Civil Procedure.

## III. ARGUMENT

### A. Legal Standard

The Supreme Court has recognized that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Moreover, the Supreme Court has "often stressed the importance of avoiding the premature adjudication of constitutional questions." *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997). "'[A] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule . . . does not require that the issues in such proceedings are necessarily controlling of the action before the court.'" *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979)). The movant bears the

DMSLIBRARY01\28161154.v2

burden of demonstrating that a stay is appropriate. *Landis*, 299 U.S. at 255.

The Seventh Circuit has often recognized a district court's inherent power to grant a temporary stay for the sake of judicial economy. *See, e.g.*, *Texas Indep. Producers & Royalty Owners Ass'n v. E.P.A.*, 410 F.3d 964, 980 (7th Cir. 2005) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of cases on its docket with economy of time and effort for itself, for counsel and for litigants." (citing, *inter alia*, *Landis*, 299 U.S. at 254)). In determining whether to grant a motion to stay, this Court typically considers three factors: "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and the court." *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009). "Because the second and third factors are similar, courts can often analyze them together." *Tele. Science Corp. v. Asset Recovery Solutions, LLC*, No. 15 C 5182, 2016 WL 47916, at *2 (N.D. Ill. Jan. 5, 2016) (citing *Conrad v. Boiron, Inc.*, No. 13 C 7903, 2014 WL 2937021, at *3 (N.D. Ill. June 30, 2014)).

**B.** **This Case Should Be Stayed Pending the Supreme Court's Decisions in *Spokeo* and *Tyson*.**

Several courts have found that a stay of proceedings is appropriate where, as here, the Supreme Court has taken a potentially dispositive issue under consideration. *See, e.g.*, *Mobley v. Head*, 306 F.3d 1096, 1097 (11th Cir. 2002) (staying execution because Supreme Court was considering "the same unequivocal rule" related to habeas petitions in a separate case and thus "the outcome in that case [would] determine the outcome here"); *Marshel v. AFW Fabric Corp.*, 552 F.2d 471, 472 (2d Cir. 1977) (staying district court proceedings where the district court's consideration of the issues would "in all likelihood, turn upon the decision" of a "closely related case" under consideration by Supreme Court); *Hicks v. Bush*, 397 F. Supp. 2d 36, 45 (D.D.C.

2005) (order staying all proceedings pending a ruling by the Supreme Court is, *inter alia*, "in the interest of judicial economy, and to avoid the expenditure of unnecessary resources by both parties"); *Michael v. Ghee*, 325 F. Supp. 2d 829, 831 (N.D. Ohio 2004) (granting stay where pending Supreme Court case "may have a dispositive effect on the instant case," noting that this "factor weighs heavily in favor of granting the stay"); *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, No. 02-80309, 2003 U.S. Dist. LEXIS 13827, at *3 (S.D. Fla. 2003) (granting stay and observing that "discretion to grant stays is routinely exercised where the U.S. Supreme Court is considering, in a separate case, the controlling issue presented in the lawsuit pending before the trial court"); *Piroglu v. Coleman*, 25 F.3d 1098, 1100 (D.C. Cir. 1994) (noting that, after parties had briefed and argued cross-motions for summary judgment, the court had previously stayed the proceedings over the objection of plaintiff in light of Supreme Court's grant of certiorari in two cases with similar issue).

Consistent with this prevailing view, numerous courts nationwide have stayed cases like this one in light of *Spokeo* and *Tyson*. *See e.g.*, *Lopez v. Miami-Dade Cnty.*, No. 15-Civ-22943-COOKE-TORRES, 2015 WL 7202905 (S.D. Fla. Nov. 6, 2015) (granting stay of class action seeking statutory damages for alleged violations of Section 1681c(g) of FACTA because "[a] decision in *Spokeo* may conclusively determine whether this Court has subject matter jurisdiction over Plaintiff's claims"); *Scheffler v. Equifax Info. Serv.'s, LLC*, Civil No. 15-3340-JRT-FLN, Dkt. No. 45 (D. Minn. Nov. 5, 2015) (granting motion to stay FCRA case before initiation of discovery and despite plaintiff's alleged injury-in-fact relating to his individual, but not class, claims); *Patel v. TransUnion, LLC, et al.*, No. 14-CV-00522-LB, Dkt. Nos. 115, 116 (N.D. Cal. Sept. 3, 2015) (granting stay of FCRA action and noting that *Spokeo* issue hovers in the background of all statutory damages cases); *Salvatore v. MicroBilt Corp.*, No. 14-CV-1848,

2015 WL 5008856 (M.D. Pa. Aug. 20, 2015) (granting motion to stay FCRA case where the upcoming Supreme Court decision in *Spokeo* "will likely guide the course and outcome of this lawsuit"); *Stone v. Sterling Infosystems, Inc.*, No. 2:15-cv-00711-MCE-DAD, 2015 WL 4602968 (E.D. Cal. July 28, 2015) ("[T]he Court concludes that staying this [FCRA] action until the Supreme Court issues an opinion in *Spokeo* would be efficient for the Court's own docket and the fairest course for the parties."); *Hillson v. Kelly Srvs., Inc.*, No. 2:15-CV-10803, 2015 WL 4488493 (E.D. Mich. July 15, 2015) ("The Court finds that a stay is warranted, *inter alia*, because *Spokeo* has the high potential to be completely dispositive of the instant case" and "has the high potential to directly impact this Court's anticipated class certification ruling. . . ." (footnotes omitted)); *Larson v. TransUnion, LLC*, No. 12-05726-WHO, 2015 WL 3945052 (N.D. Cal. June 26, 2015) (staying FCRA class action because *Spokeo* could "raise serious questions" about plaintiff's "individual standing," and *Tyson* could affect analysis of "predominance and superiority requirements necessary to certify and maintain a class action under Rule 23(b)(3)"); *Ramirez v. TransUnion, LLC*, No. 12-cv-632, Dkt. No. 184 (N.D. Cal. June 22, 2015); *Syed v. M-L LLC*, No. 14-CV-00742, 2015 WL 3630310 (E.D. Ca. May 29, 2015) (granting stipulated stay of FCRA claims); *cf. Acton v. Intellectual Capital Mgmt., Inc.*, No. 15-cv-4004(JS)(ARL), 2015 WL 9462110 (E.D.N.Y. Dec. 28, 2015) (granting stipulated stay of class action under Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), pending *Spokeo*, *Tyson*, and *Gomez v. Campbell-Ewald Co.*, 135 S. Ct. 1892 (May 18, 2015) (cert. granted)); *Luster v. Jewelers*, No. 1:15-cv-2854-WSD, 2015 9255553 (N.D. Ga. Dec. 17, 2015) ("Because it appears that the Supreme Court's decisions in *Spokeo* and *Campbell-Ewald* may be dispositive of this [TCPA] case, a stay of proceedings is warranted."); *Tel. Science Corp. v. Hilton Grand Vacations Co.*, No. 6:15-cv-969-Orl-41DAB, 2015 WL 7444409 (M.D. Fla.

10

Nov. 20, 2015) (staying case asserting statutory and actual damages under TCPA, prior to discovery, pending resolution of *Spokeo*); *Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. and Annuity Corp.*, No. CV 15-04767-AB (JCx), 2015 WL 6579779 (C.D. Cal. Oct. 19, 2015) ("[T]his Court agrees with the several other district courts in this state and elsewhere to have addressed the issue that it is appropriate to stay this [TCPA] case pending *Campbell-Ewald* and *Spokeo*." (citing, *inter alia*, *Stone*, 2015 WL 4602968, at \*3, and *Larson*, 2015 WL 3945052, at \*1 (grants of stays in FCRA actions))); *Duchene v. Westlake Serv.'s, LLC*, No. 2:13-cv-01577, 2015 WL 5947669 (W.D. Pa. Oct. 13, 2015) (granting stay of TCPA case asserting statutory and actual damages because "[b]oth [*Campbell-Ewald*] and *Spokeo* have the direct possibility of undercutting, or at least seriously calling into question, the Court's jurisdiction," and "it appears that Plaintiff will not incur any significant prejudice if a short stay of definite duration is imposed"); *Boise v. ACE USA, Inc.*, No. 15-CV-21264, 2015 WL 4077433 (S.D. Fla. July 6, 2015) (same); *Williams v. Elephant Ins. Co.*, No. 1:15-cv-00119-GBL-TCB, 2015 WL 3631691 (E.D. Va. May 27, 2015).

Indeed, in just the past few weeks, both a court in this District and a court in another district in the Seventh Circuit have granted stays of proceedings in similar cases pending the Supreme Court's decision in *Spokeo*.[1]  *See Hannahan Endodontic Grp., P.C. v. Inter-Med, Inc.*, No. 15 C 1038, 2016 WL 270224 (E.D. Wis. Jan. 20, 2016); *Tele. Science Corp. v. Asset Recovery Solutions, LLC*, No. 15 C 5182, 2016 WL 47916 (N.D. Ill. Jan. 5, 2016).  This Court should follow its decision in *Telephone Science* and the decision by its sister court in *Hannahan*, discussed in detail below, as well as the majority of courts cited above that have stayed FCRA

---

[1] These courts so held even though the Seventh Circuit currently sides with the Ninth Circuit's position in *Spokeo* that a technical violation of a statute is sufficient to confer Article III standing, *see Sterk v. Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014), and takes the approach that a class may be certified if it includes uninjured persons, so long as it does not include "a great many" of them.  *Kohen v. Pacific Inv. Mgmt. Co., LLC*, 571 F.3d 672, 677–78 (7th Cir. 2009).

class actions and other similar actions pending rulings in *Spokeo* and *Tyson*, because all relevant factors favor holding this case in abeyance until the Supreme Court rules by the end of June.

> 1.    *A stay will simplify the issues and reduce the burden of litigation on the parties and the Court.*

In *Telephone Science*, this Court considered staying a plaintiff's claims under the TCPA pending *Spokeo*. After determining that the Article III standing issue in *Spokeo* applied with equal force to TCPA cases, the Court found that a stay was appropriate in light of the fact that a decision in *Spokeo* would streamline the issues in the litigation, notwithstanding the plaintiff's efforts to distinguish its case from *Spokeo* on grounds that, in addition to mere statutory violations, it had alleged an injury-in-fact in the form of "out-of-pocket" expenses from fielding improper phone calls:

> The allegations forming the basis of Asset Recovery's alleged violation, however, are not limited to the *answered* calls that generate out-of-pocket expenses. Instead, the allegations refer to all the calls that Telephone Science *received* from Asset Recovery. Indeed, Telephone Science seeks to not only recover damages for Asset Recovery's alleged violation of the TCPA by the robocalls, but further seeks treble damages on the basis of a willful and knowing violation for Asset Recovery's "voluntarily *placed* telephone calls" to Telephone Science.
>
> The pursuit of damages based on all calls that Asset Recovery *placed or made* to Telephone Science, as opposed to all calls Telephone Science *answered*, means that the calls forming the basis of the allegations are not limited to those for which Telephone Science generated out-of-pocket expenses. Of the 11,944 calls received, if only 450 of those calls resulted in monetary damage to establish injury in fact and *Spokeo* determines that more than a mere statutory violation is needed, Telephone Science likely cannot bootstrap that standing requirement onto each and every call for which it seeks relief. *See David v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (explaining that "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought"). To the extent that *Spokeo* provides guidance for any differentiation between the categories of *calls*—answered versus placed—implications regarding Telephone Science's standing arise.

2016 WL 47916, at *4 (citations omitted). The Court explained that staying the proceedings in their nascent, pre-discovery stage was not only appropriate, but was important to reduce the

DMSLIBRARY01\28161154.v2

burden of litigation for the parties and the Court. *See id.* ("The *Spokeo* decision may also result in significantly less discovery if it limits the type or number of calls for which Telephone Science can seek damages. A stay will serve a useful purpose, therefore, to advance this litigation by promoting efficiency and economy for the proper basis of the allegations and claims that may proceed into discovery.").

The court in *Hannahan* faced the same issue and reached the same conclusion:

> Hannahan argues that its claim is different because it suffered actual damages, the cost of replacing paper and toner as a result of Vista Dental's junk faxes. However, Hannahan also seeks an injunction and statutory damages, individually and on behalf of the putative class. If the Supreme Court were to rule that actual damages is required to confer standing, *class certification would be rendered an impossibility. See* Fed. R. Civ. P. 23(a). Therefore, awaiting the ruling in *Spokeo* has *enormous* potential to simplify the issues in this case and reduce the burden of litigation.

2016 WL 270224, at *1 (emphasis added).

Like the plaintiffs in *Telephone Science* and *Hannahan,* Plaintiff here seeks damages for mere statutory violations, and like in *Hannahan*, Plaintiff seeks these statutory damages individually and on behalf of the putative classes. Whether the Court has subject matter jurisdiction to provide such relief to Plaintiff and the putative class members is uncertain in light of the Supreme Court's pending decisions in *Spokeo* and *Tyson*. By staying this action until that uncertainty is resolved in only a few months, this Court will save significant time and resources and promote the orderly course of justice, including by allowing the parties to limit the scope of discovery. If, however, the motion to stay is denied and the Supreme Court holds in *Spokeo* that a plaintiff must prove actual harm to pursue statutory damages under the FCRA, and in *Tyson* extends its *Spokeo* holding in part or in whole to class members, an order entered in the interim in this case granting class certification—or any order entered in this case in the interim—may ultimately be reversed on appeal.

13

2.      *A stay will not unduly prejudice or tactically disadvantage Plaintiff.*

In reaching its decision to grant a stay in *Telephone Science*, this Court also relied on the fact that such a stay would work no prejudice on the plaintiff. Specifically, the Court reasoned that, because the "case is in its early stages," the stay presented "potential for significant savings for both parties in terms of their time, expenses, and resources required to move forward with this litigation." *Telephone Science*, 2016 WL 47916, at *5 (citing *Boise v. ACE USA, Inc.*, No. 15-CV-21264, 2015 WL 4077433, at *5 (S.D. Fla. July 6, 2015) (concluding that "the significant time, expense, and resources required to litigate this case on the merits will be for naught if the Supreme Court rules . . . that plaintiffs . . . lack Article III standing"). The Court found it "particularly evident" that the stay would not prejudice the plaintiff considering "the Supreme Court has already heard oral argument in *Spokeo* and likely will issue a decision at the latest, by the end of its term in June of this year, resulting in, at most, a five to six-month delay in this litigation." *Id.* In fact, the Court concluded, to not grant the stay would effectively injure both parties, causing them to "suffer harm by the burdens of potentially superfluous litigation." *Id.* Again, the court in *Hannahan* concurred. *See* 2016 WL 270224, at *1 ("Hannahan argues that it would be prejudiced by the delay, but *Spokeo* was argued in November and a decision can be expected by the end of the Supreme Court's current term in June of 2016.").

This case is no different. As over a month has passed since the *Telephone Science* decision, and several weeks since the *Hannahan* decision, the courts' reasoning in these cases applies, *a fortiori*, in the present case. Plaintiff will not suffer any undue prejudice or tactical disadvantage by the entry of a brief stay in these proceedings pending the *Spokeo* and *Tyson*

rulings, which loom closer today than in either *Telephone Science* or *Hannahan*.[2]  Rather, as this Court explained in *Telephone Science*, such a stay will allow all parties, Plaintiff included, to avoid the burdens of potentially superfluous litigation.  At most, the requested stay will delay the procession of Plaintiff's claims by a few months, but such a definitive and minimal delay does not rise to the level of *undue* prejudice, particularly in light of the Court's strong competing interest in judicial economy.  *See, e.g.*, *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1008 (N.D. Ill. 2009).

## IV. CONCLUSION

Based on the forgoing, Equifax respectfully requests that the Court stay this action pending the Supreme Court's decisions in *Spokeo* and *Tyson*.

---

[2] Equifax acknowledges that some commentators have speculated on whether the passing of Justice Antonin Scalia will affect how the Supreme Court handles numerous pending cases, including *Spokeo* and *Tyson Foods*.  Until the Court speaks for itself, such speculation is not enough to warrant allowing this case to move forward.

DATED:  February 22, 2016.

Respectfully submitted,

POLSINELLI, P.C.

By:      /s/ *Rodney Lewis*_____
         Rodney L. Lewis
         Colleen Walter
         161 N. Clark Street, Suite 4200
         Chicago, Illinois  60601
         Tel:  (312) 873-3617
         Fax:  (312) 893-2033
         Email: rodneylewis@polsinelli.com
         Email:  cwalter@polsinelli.com

         Zachary A. McEntyre (admitted *pro hac vice*)
         Meryl W. Roper (admitted *pro hac vice*)
         KING & SPALDING LLP
         1180 Peachtree Street N.E.
         Atlanta, Georgia  30309-3521
         Tel: (404) 572-4600
         Email: zmcentyre@kslaw.com
         Email: mroper@kslaw.com

         *Attorneys for Defendant Equifax Information*
         *Services LLC*

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2016, I filed the foregoing document with the Clerk

of the Court using the CM/ECF System, which caused to be sent a true and accurate copy of such

filing via electronic mail to the following parties:

Roger Zamparo, Jr.
Jordan M. Sartell
ZAMPARO LAW GROUP, P.C.,
2300 Barrington Road, Suite 140
Hoffinan Estates, IL 60169
Tel.: (224) 875-3202
Fax: (312) 276-4950
roger@zamparo.com
jordan@zamparo.com

Robert S. Sola
Robert S. Sola, P.C.
8835 SW Canyon Lane
Suite 130
Portland, OR 97225
Tel.: (503) 295-6880
Fax: (503) 291-9172
rssola@msn.com

John Soumilas
Francis & Mailman, P.C.
Land Title Building, 10' Floor
100 South Broad Street
Philadelphia, PA 19110
Tel.: (215) 735-8600
Fax: (215) 940-8000
jsoumilas@consumerlawfirm.com

/s/       *Rodney Lewis*